UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| EDWIN MOORE ANDERSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 1:20-cv-00990-MHH-GMB |
| | ) |
| CHERON NASH, Warden, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

This is an action for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner Edwin Moore Anderson filed this action without the help of a lawyer. (Doc. 1). Mr. Anderson challenges the Bureau of Prisons' calculation of his good conduct time. Under 18 U.S.C. § 3624(b), good conduct time is time that a federal prisoner may receive as a credit against a federal prison sentence to reduce the overall length of a term of imprisonment. Mr. Anderson is serving an 18-month term of imprisonment because he violated the terms of supervised release by using illegal drugs. (Crim. Docs. 2, 13, 23).[1] Based on his calculation of his good conduct time, Mr. Anderson believes the BOP should release him from prison well before

---

[1] Citations to "Crim. Doc." reflect documents in Mr. Anderson's criminal docket in this district, *United States of America v. Edwin Moore Anderson*, 2:19-cr-00135-ACA-SGC.

his current release date of January 14, 2021.  He asks for immediate release from prison.  (Doc. 1, pp. 6, 13, 15-17).[2]

The magistrate judge assigned to this case reviewed Mr. Anderson's petition and recommended that the Court dismiss the petition without prejudice based on Mr. Anderson's failure to exhaust his administrative remedies.  (Doc. 10, pp. 3-6, 14).  Because the magistrate judge recognized that Mr. Anderson would not be able to exhaust his administrative remedies before his release date, the magistrate judge evaluated the merits of Mr. Anderson's two arguments for additional good time credit and rejected Mr. Anderson's arguments.  (Doc. 10, p. 6 n.1).  The magistrate judge advised the parties of their right to file objections to the report and recommendation.  (Doc. 10, pp. 14-15).  To date, the Court has not received objections.

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  A district judge must "make a *de novo* determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also* FED. R. CRIM. P. 59(b)(3)

---

[2] This § 2241 proceeding is Mr. Anderson's second attempt to have this district court order the Bureau of Prisons to re-calculate his good conduct time.  Mr. Anderson asked his sentencing judge for relief.  (Crim. Doc. 27).  The sentencing judge denied Mr. Anderson's request for relief on June 30, 2020, 14 days before Mr. Anderson filed his petition in this habeas proceeding.  (Crim. Doc. 45; Doc. 1).

("The district judge must consider *de novo* any objection to the magistrate judge's recommendation."). Although § 636(b)(1) "does not require the [district] judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Thomas v. Arn*, 474 U.S. 140, 154 (1985). That is because for dispositive issues, like habeas petitions, "the ultimate adjudicatory determination is reserved to the district judge." *United States v. Raddatz*, 447 U.S. 667, 675 (1980).

The magistrate judge set forth the facts relevant to Mr. Anderson's request for relief. They are these:

> On April 22, 2013, the Northern District of Florida sentenced Anderson to a 90-month term of imprisonment for conspiracy to defraud the government, wire fraud, and identity theft. *United States v. Anderson*, 4:12-cr-59-001(N.D. Fla. 2013). Doc. 5-1 at 10–12. He also received a term of three years of supervised release upon conclusion of his imprisonment. Doc. 5-1 at 14. On September 7, 2018, Anderson was released from prison and began his term of supervised release. Doc. 5-1 at 29. Although Anderson's conviction and sentence originated in the Northern District of Florida, that court transferred Anderson's supervision to the Northern District of Alabama on January 24, 2019. *See United States v. Anderson*, 2:19-cr-00135-ACA-SGC. Because Anderson tested positive for illegal drugs in February and March 2019, the Northern District of Alabama revoked his supervised release in October 2019 and sentenced Anderson to a term of 18 months followed by six months of supervised release. Doc. 5-1 at 26.
>
> The BOP projects Anderson's current release date to be January 14, 2021. Doc. 1 at 26; Doc. 5-1 at 5. Anderson asserts that the First Step Act of 2018 entitles him to 53 days of credit through retroactive GCT for the 90-month sentence he completed prior to the enactment of that Act, and 54 days of un-prorated credit for the final six months of his

> 18-month sentence. Doc. 1 at 9. The government responds that Anderson's failure to exhaust his administrative remedies prior to filing this § 2241 petition requires the dismissal of his claims and, in any event, BOP properly calculated his release date. Doc. 5. Anderson, in his reply, asserts that other similarly situated inmates have received retroactive GCT, but the BOP improperly deemed his revocation to be a new sentence—rather than a continuation of his original sentence—because he received a new case number when the Northern District of Florida transferred his supervision to the Northern District of Alabama. Doc. 7 at 7.

(Doc. 10, p. 2).

Turning to the analysis in the report, as noted, the magistrate judge found that Mr. Anderson did not properly exhaust his administrative remedies. (Doc. 10, pp. 3-6, p. 14). The Court adopts the magistrate judge's finding concerning exhaustion.

On the merits, the magistrate judge found that Mr. Anderson is not entitled to retroactive good conduct time pursuant to the First Step Act's increase in the annual allotment of good conduct time for the years that Mr. Anderson served in prison under his 2013 sentence because "there is no legal basis for retroactively applying GCT to an already completed sentence." (Doc. 10, p. 10). The magistrate judge also concluded that the BOP properly prorated good conduct time for the last six months of Mr. Anderson's 18-month sentence and that Mr. Anderson is not entitled to the full annual allotment of 54 days of good conduct time for those final six months. (Doc. 10, pp. 13-14).

I reach the same conclusion as the magistrate judge with respect to Mr. Anderson's argument concerning retroactive application of good conduct time under the First Step Act but depart somewhat from the authority on which the magistrate judge's conclusion rests. Mr. Anderson contends that his revocation sentence of imprisonment, ordered in 2019, is part of his 2013 sentence and that good conduct time available from his original term of imprisonment, because of the increased annual allotment of good conduct time under the First Step Act, should apply as credit towards his 18-month revocation sentence. (Doc. 1, pp. 3, 6, 9, 13). Under the First Step Act of 2018, federal prisoners may earn 54 days of good conduct time annually, an increase of seven days over the prior available annual allotment of good conduct time.[3] Congress made the seven day increase partially retroactive by providing that the 54-day credit applies to "a prisoner who is serving a term of imprisonment of more than 1 year." 18 U.S.C. § 3624(b)(1). Thus, an additional seven days of credit for each year of his initial 90-month term of imprisonment is available to Mr. Anderson if, on revocation, he "is serving" part of the incarceration component of his original sentence.

In evaluating Mr. Anderson's argument, I depart from the authority on which the magistrate judge relied because language in the cited opinions is inconsistent

---

[3] "Section 102 of the First Step Act of 2018 amended the maximum allowable good conduct time from 47 to 54 days per year." (Doc. 10, p. 7) (citing 18 U.S.C. § 3624(b)(1)).

5

with Supreme Court precedent.  (Doc. 10, pp. 7-9).  In an opinion that is persuasive authority for district courts in the circuit, the Eleventh Circuit Court of Appeals recently stated:  "Punishment imposed upon the revocation of supervised release is a modification of the sentence imposed for the original offense; it is not punishment for the conduct that violated the terms of supervised release." *United States v. Paul*, 826 Fed. Appx. 809, 814 (11th Cir. 2020).  The holding rests on the Supreme Court's decision in *Johnson v. United States*, 529 U.S. 694 (2000).

In *Johnson*, the Supreme Court rejected lower court decisions in which the lower courts had held that a term of imprisonment imposed upon revocation of supervised release for a new crime committed during a term of supervision, a violation of a mandatory condition of supervised release, was punishment for the violation of the condition of supervised release.  *Johnson*, 529 U.S. at 700; *see* 28 U.S.C. § 3583(d) ("The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State, or local crime during the term of supervision . . . .").  The Supreme Court held that the revocation sentence of imprisonment is "part of the penalty for the original offense." *Johnson*, 529 U.S. at 700.

The Supreme Court explained that critical constitutional concepts would be jeopardized if a term of imprisonment for a violation of a condition of supervised release were anything other than a part of the original penalty that a district court

6

imposed for criminal conduct established by a guilty plea or by proof beyond a reasonable doubt of a criminal violation. For example, a district court may take a person's liberty and impose a term of imprisonment for violation of a condition of supervised release even if the violation does not involve criminal conduct. And a district court may imprison an individual under supervision for new conduct that is a violation of criminal law if the government establishes the criminal violation by a preponderance of the evidence; the government does not have to meet the more demanding reasonable doubt standard to establish grounds for imprisonment if the government requests imprisonment because the individual violated a term of supervision by committing a new crime. *Johnson*, 529 U.S. at 700; *see* 18 U.S.C. § 3583(e)(3) (stating that a district court may "revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release . . . .").

 Moreover, in addition to the penalty that a court may assess for a violation of the condition of supervised release, an individual under supervision who violates a criminal law may be charged separately for the new violation and may be found

guilty of the new criminal violation either upon a guilty plea or proof to a jury of guilt beyond a reasonable doubt. The individual may be sentenced to separate terms of imprisonment, one for the violation of the condition of supervised release and another for the new criminal conduct. In this scenario, if a term of imprisonment on revocation were punishment for the new criminal conduct (as indicated in opinions cited in the report and recommendation), the lower standard of proof, the absence of a jury finding of guilt, and the potential for double jeopardy would create constitutional issues under the Fifth and Sixth Amendments. *Johnson*, 529 U.S. at 700.

More recently, in *United States v. Haymond*, Justice Gorsuch, writing for himself and three other justices, examined the constitutional boundaries of a judge's ability to impose a term of imprisonment for a violation of a condition of supervised release. Justice Gorsuch began with this fundamental proposition: "Only a jury, acting on proof beyond a reasonable doubt, may take a person's liberty." 139 S.Ct. 2369, 2373 (2019). He continued: "A judge's authority to issue a sentence derives from, and is limited by, the jury's factual findings of criminal conduct." 139 S.Ct. at 2376.[4] Tracing the history of supervision as a component of a criminal sentence, Justice Gorsuch explained that, at common law, criminal penalties initially were

---

[4] As corollary, a judge may take a person's liberty upon a confession of guilt by guilty plea but only to the extent permitted by the facts established as part of the guilty plea.

8

prescribed and that probation and parole, periods of supervised "conditional liberty" substituted for part or all of a prison term and subject to revocation, were fashioned by legislatures as "an 'act of grace.'"  139 S.Ct. at 2377.  In 1984, Congress eliminated federal parole and substituted supervised release, a form of conditional liberty that does not replace a portion of an individual's initial term of imprisonment but follows the term of imprisonment as a component of a defendant's overall sentence "to encourage rehabilitation *after* the completion of [a] prison term."  139 S.Ct. at 2382 (emphasis in *Haymond*).[5]

To be constitutionally sound, a prison term imposed upon revocation of a period of conditional liberty may not "exceed the remaining balance of the term of imprisonment already authorized by the jury's verdict" (or the facts supporting a guilty plea) because a period of imprisonment for a violation of a condition of conditional liberty, here supervised release, is tethered to the facts that produced the entire sentence of imprisonment and supervision, not the conduct that violated the condition of supervision.  139 S.Ct. at 2377.  Justice Gorsuch reiterated the lesson of *Johnson*:

> Today, we merely acknowledge that an accused's final sentence includes any supervised release sentence he may receive. Nor in saying that do we say anything new: This Court has already recognized that supervised release punishments arise from and are "treat[ed] ... as part of the penalty for the initial offense." *Johnson v. United States*, 529

---

[5] As Congress has stated, "imprisonment is not an appropriate means of promoting correction and rehabilitation."  28 U.S.C. § 3582(a).

> U.S. 694, 700, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000). The defendant receives a term of supervised release thanks to his initial offense, and whether that release is later revoked or sustained, it constitutes a part of the final sentence for his crime.

*Haymond*, 139 S.Ct. at 2379-80.  In his concurring opinion in *Haymond*, Justice Breyer put it this way:

> The consequences that flow from violation of the conditions of supervised release are first and foremost considered sanctions for the defendant's "breach of trust"—his "failure to follow the court-imposed conditions that followed his initial conviction—not "for the particular conduct triggering the revocation as if that conduct were being sentenced as new federal criminal conduct." United States Sentencing Commission, Guidelines Manual ch. 7, pt. A, intro. 3(b) (Nov. 2018); see *post,* at 2392 – 2393. Consistent with that view, the consequences for violation of conditions of supervised release under § 3583(e), which governs most revocations, are limited by the severity of the original crime of conviction, not the conduct that results in revocation.

139 S.Ct. at 2386 (Breyer, J., concurring).

Reading *Johnson* and the principal and concurring opinions in *Haymond* together, this much is clear:  a prison term imposed for violation of a condition of supervised release is cabined by the facts that undergird an individual's criminal conviction and the resulting sentence, not the facts that support the finding of a violation of a condition of supervised release.  In that sense, a term of imprisonment for revocation of supervised release is related to the original term of incarceration, and a prison sentence for revocation, when combined with the initial term of imprisonment, may not exceed the statutory maximum for the conduct that produced

the criminal sentence.[6] But that does not mean that an individual is still serving his original term of imprisonment within the meaning of the First Step Act when he is imprisoned for a violation of a condition of supervision. To the contrary, Justice Gorsuch stated that supervision begins -- and thus a violation of a condition of supervision necessarily occurs – "*after* the completion of [a] prison term." 139 S.Ct. at 2382 (emphasis in *Haymond*).

But all of this is academic because even if a term of imprisonment imposed for a violation of a condition of supervised release were an extension of an initial term of imprisonment, such that retroactive good conduct time might be statutorily available to an individual under the First Step Act, availability is not entitlement. Awards of good conduct time are within the BOP's discretion. By regulation, the BOP has exercised its discretion to refuse good conduct time that could be credited to a defendant after he is released from his initial term of imprisonment. Under 28 C.F.R. § 2.35(b), "[o]nce an offender is conditionally released from imprisonment, either by parole or mandatory release, the good time earned during that period of

---

[6] The language that the Eleventh Circuit used in *Paul*, characterizing the penalty for a violation of a condition of supervised release as "a modification of the sentence imposed for the original offense," is helpful to an understanding of the relationship between the original crime and the violation of a condition of supervision. In essence, a sentencing judge, in imposing a term of imprisonment for a violation of a condition of supervised release, is recognizing that the initial term of probation or imprisonment was not sufficient to accomplish the 18 U.S.C. § 3553(a) sentencing factors of respect for the law, deterrence or future criminal conduct, protection of the public and/or correctional treatment, so the court imposes, pursuant to § 3583, an additional term of imprisonment for the original crime in light of the information provided by the violation of the conditions of supervised release.

imprisonment is of no further effect either to shorten the period of supervision or to shorten the period of imprisonment which the offender may be required to serve for violation of parole or mandatory release." 28 C.F.R. § 2.35(b). In other words, when an offender is released, good conduct time he has accumulated or may accumulate in the future through retroactive legislative changes expires. Therefore, Mr. Anderson's argument that he is entitled to receive additional good conduct time for his initial 90-month term of imprisonment fails because the credits that he claims expired administratively when the BOP released him from custody to begin his term of supervision.

That leaves Mr. Anderson's argument that he should receive a full 54 days of good conduct time credit for the last six months of his 18-month sentence. The Court agrees with the magistrate judge's finding that the BOP properly pro-rated Mr. Anderson's available annual good conduct time for the final six months of his sentence. (Doc. 10, pp. 11-14). Therefore, the Court will not adjust the 27 days of credit that the BOP calculated for the last six months of Mr. Anderson's 18-month sentence.

Having reviewed and considered the materials in the habeas record and in the underlying criminal record, the Court finds that Mr. Anderson has not exhausted his administrative remedies, and, even if he had, he is not entitled to additional good conduct time. Therefore, the Court denies Mr. Anderson's request for an order

12

directing the BOP to recalculate his good conduct time.  By separate order, the Court will dismiss this habeas action without prejudice.

**DONE** and **ORDERED** this January 6, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE